HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BRIAN LaFRANCE, an individual,

Plaintiff,

v.

KITSAP COUNTY, a municipal corporation;
JAMES HARRIS, in his individual capacity;
CHIEF MIKE DAVIS, in his individual
capacity; CHIEF DAVID WHITE, in his
individual capacity; and CHIEF GARY
SIMPSON, in his individual capacity,

Defendant.

Case No. CV 07 - 05347 RBL

ORDER GRANTING DEFENDANTS'
MOTION FOR JUDGMENT ON THE
PLEADINGS

**Summary**.

This Matter is before the court on the Defendants' Motion for Judgment on the Pleadings. [Dkt. #14]  Plaintiff Brian LaFrance is a former Kitsap County Sheriff's Deputy.  Defendants are the County and three former and current Chiefs in the Kitsap County Sheriff's Department (Defendants Davis, White, and Simpson), as well as LaFrance's former supervisor, Lieutenant James Harris.  The procedural history of this matter is complex, but the facts relevant to this motion are largely undisputed.

In this Federal action, LaFrance seeks damages and injunctive relief, alleging (1) that his termination from the Sheriff's department was wrongful; (2) that the Defendants deprived him of his procedural and substantive due process rights during the course of a January to April 2004 arbitration hearing, after which the arbitrator found against him on a number of critical factual issues (including primarily his untruthfulness), but which also rescinded his termination; and (3) that the Defendants failed to accommodate his disability when he was reinstated for a period following the arbitration award.

LaFrance was terminated in 2001 for a variety of misconduct and policy violations.  According to

Mr. LaFrance, most or all of these related to his relationship with Lt. Harris, his supervisor.  Harris apparently had a romantic relationship with a known prostitute working through a club called "Roxannes", which was the subject of an investigation by LaFrance.  LaFrance claims that Harris assigned him an extraordinary amount of work to distract him from the Roxanne's investigation, which in turn led to his failure to keep track of and advance all of his investigations, and to his ultimate termination.

LaFrance and the Deputy Sherrif's Guild grieved his termination.  In February 2003, after his termination and grievance, and during the course of preparing for the arbitration, the Deputy Sheriff's Guild on behalf of LaFrance[1] filed a Public Disclosure action in Kitsap County, seeking disclosure of the Sheriff's Department's internal investigations of Lt. Harris, known to the parties throughout as "Harris No.1" and "Harris No. 2."  Harris No.1, (May 2001) apparently related to a domestic violence complaint and/or a suicide threat, and then (according to LaFrance) to his propensity to retaliate against subordinates.  LaFrance and the Guild had access to Harris No. 1 in redacted form prior to the arbitration.

Harris No. 2 (October 2002) related to a complaint that Harris had sold stolen items on eBay.  LaFrance admits that he sought this investigation throughout the discovery phase of the arbitration, and it is clear that the Guild's 2003 Public Disclosure action sought disclosure of this investigation.  The Guild was permitted to review an unredacted version of Harris No. 2 following a "Stipulation and Order for Protection of Documents" in the Kitsap County Public Disclosure action[2].  A Stipulated Order dismissing the Public Disclosure action was subsequently entered.  LaFrance alleges in this Federal action that he did not receive a copy of Harris No. 2 for two years after the arbitration, and that the failure to disclose that document violated his due process rights during the arbitration.

The arbitration resulting from LaFrance's termination and grievance was heard in the first part of

---

[1] LaFrance was not a party to this action.  He testifies in his Declaration [Dkt. # 22] that "having no other option, I filed suit to obtain the *Harris 1* file in May [sic] 2003."  Yet he did not take similar action seeking Harris No. 2 until after the arbitration: "On September 11, 2006 [six years after his termination], after my arbitration had concluded and the arbitrator upheld all of the discipline against me, I filed a public records request with the . . . CJTC for the Harris 2 investigation."

[2] Defendants ask this court to take judicial notice of this and related public records attached as an Appendix to their Reply Brief [Dkt.#] This request is GRANTED.  Plaintiffs, in their surrpely [ Dkt/ #33], reference a number of additional documents from the various superior court and arbitration proceedings, attached to the Declaration of Robert Christie [Dkt. #34].  The court takes judicial notice of these documents as well.

2004, and an arbitration award[3] rescinding his termination was issued in July 2004.  LaFrance was reinstated in October 2004, pending his passing independent psychological and fitness exams.  By late 2004, LaFrance apparently did not believe the Defendants were complying with the arbitration award, and the Deputy Sheriff's Guild sued on his behalf in Pierce County Superior Court.  LaFrance passed these exams or was otherwise deemed fit to return to duty by April 2005.  Shortly thereafter,  he was placed on paid administrative leave when the Sheriff determined that, due to *Brady*[4] concerns about his ability to testify, he was not fit for duty.

In July 2005, the Defendants filed their own Petition for Writ of Certiorari seeking review and vacation of the arbitration award in Kitsap County Superior Court. This action was transferred to Pierce County in November 2005[5].

In December 2005, Judge McCarthy of the Pierce County Superior Court granted the County's Motion for Summary Judgment in the Guild's action against the County, but denied its Petition for a Writ. Plaintiffs appealed to the Washington State Court of Appeals, seeking summary judgment in their favor instead.  The County Defendants cross appealed, seeking again to have the arbitration award requiring LaFrance's reinstatement vacated as unenforceable.

In June, 2007, the Court of Appeals agreed with the County that the arbitration award was unenforceable as against public policy, reversed the trial court and vacated the arbitration award.  It did so primarily because under *Brady v. Maryland*, 373 U.S. 83 (1963), Kitsap County prosecutors were required to disclose to defendants in any criminal proceeding involving work done by LaFrance, that LaFrance had a documented (in the arbitration award) history of untruthfulness.  As a result, he could not effectively testify, or sign affidavits in support of search warrants. Accordingly, it vacated the arbitration award requiring his reinstatement as unenforceable as against public policy.  *See* Opinion at 10, 11.

A month later, LaFrance sued in this court. His 42 U.S.C. §1983 complaint [Dkt. #1] alleges that the Defendants deprived him of his property right to continued employment, when they deprived him of his

---

[3]Defendants ask this court to take judicial notice of this opinion and the Defendants' state court pleadings seeking review of the arbitration award, which are located in an Appendix to the Defendants' Motion here.  This request is GRANTED.  The opinion is *Kitsap County Deputy Sheriff's Guild and Deputy Brian LaFrance v. Kitsap County and Kitsap County Sheriff*, 139Wn. App.1030, No. 34321-4-II (June 26, 2007).

[4]*Brady v. Maryland*, 373 U.S. 83 (1963).

[5]This action was apparently stayed at the County's request, but its ultimate resolution is not clear.

ORDER
Page - 3

due process rights during the arbitration.  This claim relates to LaFrance's unsuccessful efforts to obtain a copy of the Harris No. 2 investigation, which LaFrance claims would have assisted his efforts in that arbitration.

LaFrance also alleges that the Defendants failed to accommodate his mental health disability during the period he was reinstated following the arbitration award and prior to his suspension based on the Department's analysis of the *Brady* issue.  Finally, he claims that the *Brady* determination was arbitrary and capricious, and seeks injunctive relief.

Defendants argue that these claims are barred by res judicata (claim preclusion) and collateral estoppel (issue preclusion) because they were or could have been fully litigated in the arbitration and other suits which preceded this case.  Plaintiff argues that both claims relate to matters beyond the scope of the prior litigations.

**Discussion**.

**A.    Standards for a Rule 12(c) Motion for Judgment on the Pleadings and a Rule 56 Motion for Summary judgment.**

The standard against which Defendant's Motion must be judged is familiar and well-settled. A district court may grant a motion for judgment on the pleadings "when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Yanez v. U.S.A.*, 63 F.3d 870, 872 (9th Cir. 1995); Fed. R. Civ. P. 12 (c). The court determines whether, if the plaintiff proved what he pleaded, the defendant would nevertheless be entitled to judgment as a matter of law. *Singer v. State Farm*, 116 F.3d 373 (9th Cir. 1997).

Plaintiff argues that the fact both parties have submitted material outside the pleadings converts this motion to one for summary judgment. He apparently does so in order to take advantage of Rule 56(f) and to conduct additional discovery prior to consideration of this motion.

As the Defendants argue, a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, so long as the facts are not subject to reasonable dispute.  *See Lee v. City of Los Angeles*,  250 F.3d 668, 689 (9th Cir.  2001.)  Here, the bulk of

materials submitted by both sides are matters of public record (or a verbatim transcript of the arbitration proceeding both obviously attended) and neither party disputes the contents of any of them.  Nevertheless, the court has considered all of the materials, and Plaintiff's contention that the Motion is now one for summary judgment is correct.

The standard for summary judgment is perhaps even more clearly established.  Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the non-moving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

The facts, excluding perhaps those allegations contained in Mr. LaFrance's Declaration, are not disputed. The Plaintiff's Rule 56(f) Motion is DENIED, as he has not and cannot identify any evidence which would change the fact that his claim for Harris No. 2 has been adjudicated.

**B. Collateral estoppel (issue preclusion).**

The doctrine of collateral estoppel prevents relitigation of an issue after the party estopped has had a full and fair opportunity to present its case. The purpose of the doctrine is to promote the policy of ending disputes, to promote judicial economy, and to prevent harassment of, and inconvenience to, litigants. The requirements which must be met when applying the doctrine are: (1) the issue decided in the

ORDER
Page - 5

prior adjudication must be identical with the one presented in the second; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice. *See Hanson v. City of Snohomish*, 121 Wn.2d 552, 561-561, 852 P.2d 295 (1993).

**1.     Plaintiff's claim that the arbitration violated his due process rights.**

Plaintiff's primary claim is that the Defendants were obligated to, and did not, provide him with a copy of Harris No. 2 prior to the arbitration hearing.  He argues that the information contained therein would have been useful to him in defending himself, and that the failure to disclose the document violated his Constitutional rights.   Defendants argue that plaintiff is precluded from revisiting the precise issue addressed in those two prior forums: whether, and to what extent, Plaintiff was entitled to receive a copy of Harris No. 2.

LaFrance admits that he and his prior attorney sought this investigation throughout the arbitration, that the Guild filed a "Public Disclosure Action" on his behalf primarily for the purpose of obtaining a copy of this investigation, and that, pursuant to a stipulation in that action, he reviewed it prior to the arbitration**.** He does not deny that he explored the issue that was the focus of Harris No. 2 (the accusation that Harris sold stolen items on eBay, as well as the claim Harris had a relationship with a known prostitute), during the arbitration.  Despite the efforts of LaFrance and the Guild, neither the arbitrator nor the Superior Court ordered the production of the Harris No. 2 file in any other form, and the Public Disclosure Action was dismissed on a stipulation.

LaFrance nevertheless  argues that collateral estoppel does not apply. He concedes that the prior adjudications ended with a final judgment on the merits, but attacks the other three elements of collateral estoppel.

LaFrance argues that the issue here is not identical, because no prior adjudication related to his current claim that Defendants deprived him of his due process rights by failing to disclose the Harris No. 2

investigation.  The court disagrees.  The issue adjudicated against the disclosure LaFrance seeks in this case in both prior cases was his entitlement to production of the Harris No. 2 investigation.  LaFrance is not free to repeatedly sue on this claim, simply by articulating new and different theories about why he should have obtained the file earlier.  The issues are identical for purposes of collateral estoppel with respect to the Harris No. 2 investigation.

LaFrance also claims that the parties involved in the prior proceeding(s) were not identical, focusing on the fact that he has not previously sued Harris[6] or the various individual Sheriff's Deputies.  He does not address the concept of privity with respect to this claim.  Defensive collateral estoppel, in which a stranger to the judgment seeks to use it as a shield against subsequent litigation, is available under Washington law. LaFrance was a party to the arbitration and the subsequent court of appeals opinion.  The individual Sheriffs were in privity with the County inasmuch as the county can only act through its human representatives, and as the Defendants argue, the Sheriff – the party with the power to disclose Harris No. 2 – was a party in the prior litigations.  The parties to this action are identical for purpose of collateral estoppel.

LaFrance finally argues that the application of collateral estoppel on his claim of entitlement to the Harris No. 2 investigation would work an injustice.  His stated goal in obtaining this document is to "undo" the arbitration (which he initially "won") and essentially reverse the subsequent court of appeals opinion (which vacated his victory).   He claims he did not have a full and fair opportunity to litigate this issue previously, because he did not have a copy of the investigation which would cast doubt on Harris' credibility[7].   He or his representatives twice sought the investigation, and the Guild (acting on behalf of

---

[6]LaFrance argues that Harris is not a party to this Motion, but Harris did file a "Joinder and Non-Opposition" to the Motion [Dkt. # 17], which is not opposed and in any event is GRANTED.

[7]LaFrance argues that his inability to explore the full depths of Harris' "untruthfulness" deprived him of his Constitutional rights.  This argument tacitly endorses the Court of Appeals' conclusion that the Defendants' *Brady* determination (that LaFrance was unfit to serve because Defendants were obligated to disclose LaFrance's documented history of untruthfulness) was correct. Yet LaFrance simultaneously argues that that determination was "arbitrary and capricious," and that he should have been reinstated.

ORDER
Page - 7

LaFrance) actually reviewed it.  Indeed, LaFrance argued and presented evidence in the arbitration about the core contents of the Harris No. 2 investigation, as well as other matters reflecting poorly on Harris' character and credibility.

LaFrance initially prevailed in his arbitration, but the rescission of his termination was overturned by the state court of appeals.  This court cannot review that decision anymore than it can retry the entire case, but it is apparent that the *Brady* concerns are well-founded.  LaFrance has not demonstrated that precluding re-litigation of this issue would work an injustice.  For these reasons, LaFrance's claim that he was entitled to the Harris No. 2 investigation is barred by collateral estoppel.

**2.      Plaintiff's claim that the Defendants failed to accommodate his mental health disability.**

Defendants argue that because the court of appeals vacated the arbitration award (which in turn rescinded his termination), LaFrance had no protected interest in his job during the period he was reinstated after that award and prior to the appellate court's reversal.  In other words, they claim, because his 2001 termination was upheld, the claim that the Defendants did not accommodate his mental health disability is moot.

LaFrance argues that the discrimination (failure to accommodate) claim has never before been raised.  But he does not and cannot explain how this claim can survive the court of appeals' determination that the portion of the arbitration award reinstating him in the first place was unenforceable as against public policy.  In the absence of a right to employment, LaFrance cannot assert a "failure to accommodate" claim.  The Defendants' argument that this claim is barred by collateral estoppel, and is moot, is correct.

**C.      Res Judicata (claim preclusion)**

Under the doctrine of res judicata (claim preclusion) a prior judgment bars litigation of a subsequent claim if the prior judgment has concurrence of identity with respect to (1) subject matter; (2) cause of action; (3) persons and parties, and (4) the quality of the person for or against whom the claim is made.

*See In re Election Contest of Coday,* 156 Wn.2d 485, 130 P.3d 809 (2006), *cert. denied,* 127 U.S. 444 (2006).

Defendants argue that LaFrance's claim in this case is essentially the same as the one he raised previously: that he was entitled to a copy of the Harris No.2 investigation during the arbitration.

LaFrance responds that the claims here – that the arbitration was flawed to such an extent that his due process rights were violated, and that the Defendants failed to accommodate his disability when he returned to work after the arbitration award in his favor – necessarily were not adjudicated in the arbitration.  He is correct, to an extent.  He has not raised these precise claims before.

Neither party discusses why LaFrance could not or did not raise the due process issue in a direct attack on the arbitration award.  LaFrance would apparently argue that he had no reason to, as he prevailed on his primary claim of reinstatement[8].  However, the basis for the court of appeals' opinion was that the arbitrator had already determined that LaFrance was not truthful – an issue which LaFrance apparently claims is directly informed by his inability to use Harris No. 2 to impeach Harris at the arbitration.  He knew then that his credibility had been undermined and that the discipline against him, save termination, had been upheld.  He therefore could have raised the arbitrator's refusal to order production of Harris No. 2 at that time.

A reviewing court cannot generally address the underlying merits of an arbitration award. *See* RCW 7.04A.230; *Davidson v. Hensen*, 135 Wn.2d 112, 119, 954 P.2d 1327 (1998).  Nevertheless, one may ask a superior court having jurisdiction to vacate an award under RCW 7.04A.230 where the award was procured by corruption, fraud, or *other undue means*:

(1) Upon motion of a party to the arbitration proceeding, the court shall vacate an award if:
(a) The award was procured by corruption, fraud, or other undue means;
(b) There was:

---

[8]This is the argument made by LaFrance in response to the County's "compulsory counterclaim" argument, raised in their Reply [Dkt. # 29].  The court need not and does not address this argument given its resolution of the original motion.

(i) Evident partiality by an arbitrator appointed as a neutral;
(ii) Corruption by an arbitrator; or
(iii) Misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding[.]

*Id.* It is not clear to this court whether LaFrance's effort to revisit this issue, which was fully addressed by the arbitrator, would have been viable under RCW 7.04A.230.   However, LaFrance does not provide authority for the proposition that he can instead raise it here, in what amounts to a collateral attack on the underlying merits of the arbitration award.  Permitting him to re-litigate the issues before the arbitrator by recasting them as due process claims would undermine the sound policy reasons behind the doctrines of collateral estoppel and res judicata: that at some point there must be an end to litigation.

For these reasons, the Defendants' Motion [Dkt. #14] is GRANTED.  All of Plaintiff's claims are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 29th day of January, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE

ORDER
Page - 10